**Evangelos Pashos**
**31 Virginia Court**
**Hooksett, NH  03106**

**CIGNA Corporation d/b/a CIGNA Group**
**Insurance, CIGNA Disability Management**
**Solutions, INA Life Insurance Company of New**
**York, CIGNA Life Insurance Company of New**
**York, Life Insurance Company of North America,**
**Connecticut General Life Insurance Company,**

**see attached for additional Defendants and Addresses**

**SEE ATTACHED SPECIFICATIONS.**

David S.V. Shirley

Additional Defendants and Addresses

**INA Life Insurance Company of North America, and CIGNA Employee Benefits Companies**
**1 Liberty Place**
**1650 Market Street**
**Philadelphia, PA 19192-1550**

**and**

**Parlex Corporation**
**One Parlex Place**
**Methuen, MA  01844**

**Evangelos Pashos**
**31 Virginia Court**
**Hooksett, NH 03106**

**v.**

**CIGNA Corporation**
**d/b/a CIGNA Group Insurance,**
**CIGNA Disability Management Solutions,**
**INA Life Insurance Company of New York,**
**CIGNA Life Insurance Company of New York**
**Life Insurance Company of North America,**
**Connecticut General Life Insurance Company,**
**INA Life Insurance Company of North America,**
**and CIGNA Employee Benefits Companies**
**1 Liberty Place**
**1650 Market Street**
**Philadelphia, PA 19192-1550**

**and**

**Parlex Corporation**
**One Parlex Place**
**Methuen, MA 01844**

**Merrimack County Superior Court**
**February, 2006 Return**

## DECLARATION

NOW COMES the plaintiff, Evangelos Pashos, a citizen of the United States of America

with a residence at 31 Virginia Court, Hooksett, New Hampshire 03106, County of Merrimack and

State of New Hampshire, by and through his counsel, McDowell & Osburn, P.A., and seeks redress

for the following claims in regards to a disability income policy obtained and/or administered by

Parlex Corporation, a Massachusetts entity with a principal place of business in Methuen,

Massachusetts, for the plaintiff's benefit and issued by or through, and/or administrated by, CIGNA

Corporation doing business as several past and present entities including, but not limited to, CIGNA Group Insurance and CIGNA Disability Management Solutions [collectively "CIGNA"], a Delaware Corporation with a principal place of business located at 1 Liberty Place, 1650 Market Street, Philadelphia, PA 19192 and also doing business at 12225 Greenville Avenue, Suite 1000, Dallas, Texas, 75243. The plaintiff demands a trial by jury on all of his claims so triable, and further pleads as follows:

## GENERAL ALLEGATIONS

Nature of Disability

1.      In 1981, the plaintiff, Evangelos Pashos ["Pashos"], was employed by the Defendant, Parlex Corporation ["Parlex"], as a supervisor/engineer when he was diagnosed with a large, left-sided acoustic-neuroma. He turned 34 years old on November 30, 1981. Pashos had been employed with Parlex as a Production Supervisor and a Production Engineering Supervisor since 1977.

2.      In March of 1982, Pashos was subjected to an operation to remove the neuroma ["tumor"]. This operation included cutting a hole through his skull and cutting through nerves and nerve/brain tissue in order to remove the tumor. He required an additional operation to eliminate CSF rhinorrhea. In March of 1983, Pashos underwent yet another operation termed a hypoglossal facial anastomosis.

3.      Pashos attempted a return to work, but failed. His last day at work was on or about July 2, 1983.

4.      Effective April of 1984, Pashos was determined to be eligible for Social Security disability benefits and he has continuously received Social Security disability payments from that time to the present day.

5.      Pashos began receiving total disability payments from or through CIGNA sometime before May 5, 1984.  CIGNA unilaterally ceased making disability payments to Pashos effective December 3, 2004.

6.      On June 4, 1985, Mr. Pashos was evaluated by one of his treating physicians, George B. Neal, MD, a neurologist.  Dr. Neal reported persistent occipital and left facial pain that was not relieved by narcotic medication.  He also noted recurrent pain in both ears that was brought on by stress, bending, yelling, intercourse, swimming or exposure to cold temperatures.  Other ways Pashos was affected by these operations included:  decreased coordination with his left arm; complete loss of hearing in his left ear; problems swallowing and controlling the left side of his throat and tongue; difficulty closing his left eye; increased coughing in reaction to the perception that something is continually lodged in his throat; periodic burning sensation on the left side of his face; and diminished corneal response in his left eye.

7.      By August 11, 1985, another of Pashos' treating physicians, Robert Thies, MD, a neurologist, reported that the affects of the tumor and related surgeries had a "particular, devastating effect . . . on [Pashos] psychologically."

8.      By October 18, 1988, Pashos was exhibiting noticeable atrophy of the left side of his palate, tongue and face.  He is also reported by Stephen Rowe, MD, as suffering from "chronic cough and episodic wheezing" resulting from "chronic post nasal discharge."

9.      By October 27, 1989, Pashos is reported by Dr. Thies to have "chronic changes" in his "left ear canal" with reports of repeated left ear infections which in turn increased his constant pain.

10.     By August 21, 1990, Pashos is reported by Dr. Thies as having increased nausea and dizziness that persists for months at a time.

11.     In 1991, Mr. Pashos experienced leakage of spinal/brain fluid from the site of his March 1983 tumor surgery as a result of a meningitis infection.  He was hospitalized and had yet another surgery – this time to seal his left ear.

12.     In 1994 Pashos was re-evaluated by Dr. Thies.  He was noted to have developed a chronic asthmatic condition which required inhaler use, periodic episodes of extreme head pain that is unrelieved by any medication, irritation and tearing in his left eye, and clumsiness relative to his hand coordination.

13.     On October 18, 1995, Pashos had a follow up CT of his brain.  The examination noted several left sided changes, including "mild left cerebral atrophy", and was negative for any recurrent tumor.  Also in 1995, Dr Thies noted worsening of Pashos' chronic asthma.

14.     On March 17, 2001, Dr. Thies noted that Pashos "has continued to feel unsteady when he changes positions quickly."

15.     On March 17, 2004, Dr. Thies noted that Pashos was experiencing an increase in pulmonary problems with repeated upper respiratory infections

16.     On October 19, 2004 Dr. Thies reported directly to CIGNA that, in addition to pain, facial weakness and other problems, Pashos has "chronic positional vertigo"  that has gotten worse over time, particularly after the brain/spinal fluid leak, meningitis infection and resulting surgery.

17.     From 1990 through 2004 Dr. Thies repeatedly completed "Supplementary Claim Disability Benefits" forms with the CIGNA logo and the names CIGNA and CIGNA Group Insurance on them.  In each case, Dr. Thies made it clear that Pashos was not expected to improve. He also repeated noted that Pashos had an abnormal brain, chronic head pain and that he had severe limitations on his functional capacity.

18.     Since the initial operation in 1982, Pashos has been taking narcotic pain medication. The primary narcotic medication taken by Pashos has been Darvocet that Pashos uses daily to help sleep.  When experiencing episodic increases in pain, Pashos increases his use of Darvocet – taking it during the day as well as the night.  Further, Pashos' treatment providers uniformly reported from 1984 to the present that Pashos spends much of his time in Greece where he is not subjected to cold weather fluctuations that adversely affect his chronic pain.

19.     In responding to questionnaires from CIGNA, Pashos repeatedly noted that he is only capable of conducting limited activities, such as short walks and occasionally gardening, when he is not experiencing random periods of increased pain and vertigo.

20.     In a 2004 CIGNA staff memo it is noted that the Pashos case was referred to a vocational rehabilitation counselor who reported to CIGNA that Pashos "would not be a good candidate for rehabilitation."

21.     On April 15, 2005, Dr. Thies provided a letter report on Pashos' condition.  He reported that Pashos "has a feeling of unsteadiness as a baseline and, at times, often without warning or prodromal symptoms experiences vertigo."  In addition, Pashos suffers from "facial asymmetry, poor hearing, and chronic sensory distortion and incoordination".  As a result, Dr. Thies opines that

Pashos continues to have "severe limitation of functional capacity" and is "incapable of minimal activity" because of his "fluctuating and unpredictable patter of pain and vertigo."

22.　　On May 31, 2005, James T. Parker, a Certified Rehabilitation Counselor and a Social Security Administration Certified Vocational Expert, provided a Vocational Assessment Report on Pashos.  Mr. Parker determined, based upon medical evidence provided by direct care providers and his own vocational analysis, that "Mr. Pashos is incapable of performing in his prior occupation due to his disabilities and functional limitations."  Mr. Parker goes on to opine that "In addition, the impairments documented by Dr. Thies and others preclude Mr. Pashos' ability to perform any work at the skilled, semi-skilled, or unskilled level.  His vertigo, dizziness, left sided weakness, and fatigue render him unemployable in any occupation.  In addition to his disabilities, Mr. Pashos' age and length of time removed from the work environment are major barriers to obtaining employment."  Mr. Parker also concludes that "Mr. Pashos will remain totally disabled for the foreseeable future."

23.　　Pashos turned 58 years old on November 30, 2005.


Denial of Benefits

24.　　By way of correspondence dated October 7, 2003 and November 12, 2003, CIGNA contacted Pashos and offered to provide him a lump sum benefit in lieu of continued monthly disability payments.  Pashos did not respond to these offers.

25.　　CIGNA noted in internal e-mail communication dated July 19, 2004 that Pashos had not responded to the offer to lump sum his monthly benefits.

26.     CIGNA then had an osteopathic physician, Scott C. Taylor, DO, who was in CIGNA's full time employ, review the Pashos case in October of 2004. Dr. Taylor concluded that the "restrictions/limitations indicated by the physician are not supported" and there was a lack of "clinical data" to "substantiate the functional deficits". He concluded that "the current medical information does not support functional deficits of impairment which preclude the claimant from performing the material and substantial duties of his occupation." Dr. Taylor made his October 20, 2004 conclusions without reference to CIGNA's prior vocational rehabilitation consultation indicating Pashos was not a candidate for rehabilitation.

27.     By way of correspondence dated October 28, 2004, CIGNA notified Pashos that it was terminating his disability benefits effective December 3, 2004. CIGNA based this denial of benefits on a "lack of clinical data which would substantiate your functional deficits." As such, after more than 20 years of providing disability payments supported by a continuous flow of medical reports substantiating the disability, CIGNA determined that "current medical information submitted does not support the report impairments which would preclude you from performing the material duties of any occupation."

28.     In its denial, CIGNA referenced review by a "Nurse Case Manager" in addition to a "Physician Advisor". Noticeably absent from CIGNA's denial is any mention of it receiving input from its vocational rehabilitation counselor who had indicated that Pashos was not a candidate for rehabilitation.

29.     The October 28, 2004 CIGNA denial letter stated that Pashos has "a right to bring legal action for benefits under ERISA section 502(a)." However, the denial failed to comply with

other requirements for denials of ERISA benefits set forth in 29 U.S.C. § 113 and 29 C.F.R. §

2560.

30.     The denial also offered Pashos 180 days to request "a review of this denial" by

writing to "Life Insurance Company of North America" and addressing the request for review to

"CIGNA Disability Management Solutions" in Dallas, Texas.


Administrative Review

31.     By way of correspondence dated December 3, 2004, Pashos, through counsel,

notified CIGNA that he was appealing the denial of his disability benefits.  Included in this letter

was the statement that he knew of no "evidence to the effect that he is not totally disabled."  The

letter also informed CIGNA that additional information would be obtained in the future from Dr.

Thies.  This letter had no attachments, requested that CIGNA continue to pay benefits pending the

appeal, and did not seek any immediate review of the denial.

32.     In response to the December 3, 2004 letter, CIGNA sought confirmation directly

from Pashos of his representation by counsel and requested that Pashos complete authorizations to

allow it to obtain medical information and to allow it to release information to his chosen counsel.

Pashos executed both authorizations.

33.     The authorization for release of medical information used by CIGNA had the

CIGNA name and logo next to the name CIGNA Group Insurance.  The authorization used the term

"Company" as referring to Life Insurance Company of North America, Connecticut General Life

Insurance Company and CIGNA Life Insurance Company of New York.

34.     By way of correspondence dated January 3, 2005, Pashos conveyed the executed authorization requested by CIGNA so that it could independently obtain medical information.  The letter specifically stated "This authorization is sent to you on the condition that you send us copies of whatever you acquire by using this authorization."

35.     Once CIGNA was notified of the decision by Pashos to seek review of CIGNA's denial of his benefits, CIGNA had an affirmative obligation under ERISA to provide Pashos and his chosen counsel all of the information relied upon by CIGNA in making its denial.  Glista v. UNUM Life Ins. Co. of America, 378 F.3d 113, 129 (1st Cir. 2004).

36.     Pursuant to 29 C.F.R. § 2560.503-1(g), CIGNA was, and is, required to provide Pashos with all relevant documents – including all consultation reports obtained by CIGNA, a copy of the disability insurance policy in question, a copy of the ERISA plan, a copy of CIGNA's relevant appeal and review procedures, and the rest of the file accumulated by CIGNA on Pashos.

37.     CIGNA decided to treat the December 3, 2004 notice that Pashos would be appealing the denial of his benefits as an appeal itself.  By way of correspondence dated February 18, 2005, CIGNA notified Pashos that it could not complete a review of the denial within 45 days because of the time needed "to review submitted medical documentation."  CIGNA sought this additional time even though Pashos had not yet submitted any additional medical documentation.  CIGNA also promised resolution of the claim "by March 17, 2004."

38.     In response to the CIGNA letter of February 18, 2005, Pashos, in a letter dated February 22, 2005, referred CIGNA to his earlier letters of December 3, 2004 and January 3, 2005 and notified CIGNA that "I have not received any response from you whatsoever to these letters" and requested a response.

39.     Further, Pashos wrote again to CIGNA on February 25, 2005.  He specifically requested "a copy of Mr. Pashos' entire claim file."  He further stated, through counsel, that "As you know, Mr. Pashos has an absolute right to this information once you made this denial and our office notified you of his decision to appeal."

40.     On March 24, 2005, counsel for Pashos received a packet of documents from CIGNA.  Noticeably absent was any physician, nurse practitioner, vocational rehabilitation counselor or any other consultant information or report relative to any review of the Pashos claim or file.  Also absent from this packet was any cover letter outlining the content of the packet or stating the reason for transmitting the packet.  The packet was also devoid of any copy of any insurance policy, ERISA plan or review procedures.

41.     Through a letter dated March 25, 2005, CIGNA notified Pashos that it had "completed our review and must uphold our prior decision to deny your claim."  The denial stated that "your claim is being denied for the reasons detailed in our previous letter."  The letter goes on to invite Pashos to seek further review of the denial "within 180 days of the receipt of this letter."

42.     By way of letter dated March 29, 2005, counsel for Pashos again requested the complete Pashos file from CIGNA, including a copy of all communications with in-house experts and others – including "a copy of all records, reports and other documents supplied to you by any vocational rehabilitation expert or any other expert opining on Mr. Pashos' work capacity."

43.     On April 11, 2005, counsel for Pashos followed up his March 29, 2005 letter with correspondence to CIGNA citing relevant ERISA authority and again requesting all relevant documents.  Counsel also specifically requested "a complete copy of the relevant disability policy,

and all of CIGNA's written procedures for administering Mr. Pashos' disability benefits, making relevant denial determinations and handling resulting appeals."

44.     By way of correspondence dated June 3, 2005, and mailed June 7, 2005, Pashos sought review of the denial of his benefits.  In so doing, Pashos presented a letter opinion from Dr. Thies and a Vocational Assessment Report from Mr. Parker.  Both opinions unequivocally state that Pashos is totally disabled from any occupation.  Pashos supported these reports by referencing his 23 year medical history and how it documents a worsening of his conditions and disability over time.  Further, as CIGNA had not provided a complete copy of its Pashos file, had not provided a copy of its disability policy, had not provided a copy of the ERISA plan documents, and had not provided a copy of its review procedures, Pashos' was limited in his ability to fairly appeal CIGNA's twice denial of his benefits.

45.     The June 3, 2005 correspondence with enclosures seeking review was sent to CIGNA by certified, return-receipt mail.  The return receipt card shows acceptance by CIGNA on June 13, 2005.

46.     By way of en envelope post-marked July 2, 2005, CIGNA sent Pashos a second package of documents.  Most of this package was a duplicate of the earlier, March 2005 package.  There were two new documents of importance in this second package.  There was a one page e-mail from Scott C. Taylor, DO, discussing his review of the claim and opining that the Pashos file was lacking clinical support for the claimed disability.  There was also a CIGNA staff memo indicating that a review of the Pashos file by a vocational rehabilitation counselor resulted in the opinion that Pashos would not be a candidate for rehabilitation.  Noticeably absent from this package of documents was: (1) any transmittal letter identifying the contents; (2) any documents relative to the

vocational rehabilitation counselor's review of the file; (3) any documents relative to the review by the Nurse Case Manager referenced in the CIGNA denial letter of October 28, 2004; (4) a copy of the disability policy; (5) a copy of CIGNA's applicable review procedures; and (6) a copy of the ERISA plan.  Other relevant documents, such as the decision to have Dr. Taylor review the file and the request for Dr. Taylor to review the file, were also absent.

47.     On July 7, 2005, Pashos sent a letter to CIGNA requesting confirmation that the July 2, 2005 package of documents was in fact CIGNA's entire claim file in this case.  The letter also sought a time by which CIGNA would respond to the June 3, 2005 letter seeking further review of CIGNA's denial.

48.     On August 24, 2005, Pashos sent another letter to CIGNA seeking response to his June 3, 2005 letter requesting further review of his denial.  The letter stated "I would expect that ERISA deadlines would require some form of response by this time."  The letter also requested confirmation once again that the July 2, 2005 package was CIGNA's entire claim file and also requested, once again, a copy of the ERISA plan at issue.

49.     By way of letter dated September 29, 2005, CIGNA notified Pashos that the package of documents postmarked July 2, 2005 was "a copy of the claim file."  CIGNA also invited Pashos to submit a new request for review of their denial of his benefits.  CIGNA did so without reference to the pending June 3, 2005 letter with enclosures seeking review of the denial of his benefits.

50.     By way of correspondence dated October 5, 2005, Pashos pointed out to CIGNA that before he "request[ed] yet another appeal from CIGNA, I would request that you rule on the appeal that we mailed to you on June 3, 2005.  That appeal did include new information in the form of a report from Dr. Thies . . . and Mr. James Parker , a vocational rehabilitation expert."

51.    CIGNA has never responded to, or acknowledged, the June 3, 2005 letter appeal and has never responded to the October 5, 2005 letter.

52.    CIGNA has never provided any documents to Pashos other than the March 2005 package and the July 2005 package.

Lack of Policy and ERISA Plan

53.    Disability benefits in this case are based upon a policy obtained by Parlex from or through CIGNA that was in effect some 22 years ago when Pashos became disabled in 1983.

54.    CIGNA has refused to continue to provide Pashos any benefits while alleging that any benefits are controlled by ERISA.  CIGNA has refused to provide a copy of the relevant policy and the relevant ERISA plan.  As a result, Pashos is unable to determine whether his claim to benefits is in fact subject to ERISA.

## COUNT I
## CLAIM FOR ERISA BENEFITS
### (PARLEX & CIGNA)

55.    Pashos hereby incorporates by reference the allegations set forth in paragraphs 1-54 as though alleged herein.

56.    Parlex and/or CIGNA administrates the claimed ERISA plan which included the insurance policy providing disability benefits to Pashos.

57.    CIGNA is the agent of Parlex to the extent that it acts through Parlex to administer any ERISA benefits claimed by Pashos.  As such, all ERISA allegations against CIGNA apply equally to Parlex.

- 15 -

58.     For the purposes of the remaining allegations in this count, Pashos assumes the existence of an ERISA plan that incorporates the disability income policy through which he is claiming benefits:  Pashos has not been provided with any evidence of such a plan and generally denies its existence and further denies that any existing ERISA plan includes within its scope his claim for disability benefits and damages.

Exhaustion of Administrative Remedies

59.     Pashos has made every reasonable effort to pursue and exhaust his administrative remedies in this matter prior to filing suit.

60.     CIGNA has refused to provide Pashos with copies of any plan documents, including review procedures and the applicable insurance policy.

61.     CIGNA, even after multiple reminders, has refused to consider Pashos' June 3, 2005 request for review of the denial of his claim.

62.     CIGNA has steadfastly refused to provide Pashos with a complete copy of his claim file, including, but not limited to, reports from a CIGNA employed vocational rehabilitation counselor whose opinion is adverse to CIGNA's denial.

63.     It is clear that CIGNA's conduct in this matter shows that further pursuit of administrative remedies in this matter would be futile and useless.

De Novo Review

64.     Absent clear and unambiguous language in the 1983 ERISA plan documents granting the plan administrator or his/her/its designee benefit determination deferential discretion upon judicial review, review of the denial in this matter is de novo.

65.     Even if the 1983 ERISA plan clearly calls for deferential judicial review, a conflict of interest exists for the plan administrator in this matter such that any judicial review should be de novo.

Continuing Disability

66.     CIGNA's October 28, 2004 denial letter states that benefits will be due and owing to Pashos if he is "totally disabled" as defined in that letter.

67.     Pashos is "totally disabled" as that term is defined in CIGNA's October 28, 2004 letter.

68.     Pashos will be "totally disabled" as that term is defined in CIGNA's October 28, 2004 letter for the rest of his life.

Attorney Fees

69.     CIGNA has acted in bad faith in administering the denial of Mr. Pashos' benefits.  It seeks to punish Mr. Pashos for refusing to lump sum his monthly benefits.  It seeks to keep secret information favorable to his claim for benefits, including its prior vocational rehabilitation counselor's report supporting Mr. Pashos' claim.   It has blatantly refused to provide relevant documents to Mr. Pashos which in turn undermines his ability to fairly challenge the denial of his claim.  It has repeatedly refused to consider a pending request for review of his claim even after

receiving multiple reminders of that pending request.  Its failure to fairly follow the ERISA

procedures for administrative denials and reviews of those denials required the filing of this lawsuit.

70.     CIGNA has the ability to satisfy any award of attorneys fees and costs in this matter.

71.     An award of attorneys' fees and costs against CIGNA may help deter CIGNA and

other disability administrators from acting improperly in the future.

72.     The relative merits of the parties' positions in this matter also supports an award of

attorneys' fees and costs.  The facts in this matter overwhelmingly support Mr. Pashos' claim for

benefits.  CIGNA's denial of benefits controverts its own vocational rehabilitation report and is not

supported by any medical documentation.

73.     As such, Pashos is entitled to the award of attorneys fees and costs in this matter

pursuant to 29 U.S.C. § 1132(g)(1).


Relief

74.     That as a direct and proximate result of CIGNA and/or Parlex's failure to properly

administer the ERISA disability benefits claimed by Pashos, Pashos has suffered the loss of the

present value of the benefits owed to him under the disability policy issued/held/administrated by

CIGNA and/or Parlex from December 3, 2004 to the present and Pashos will suffer the loss of future

monthly disability payments as they become due, a combined amount within the jurisdictional limits

of this Court, together with interest and costs.

75.     That due to Pashos' total and permanent disability, CIGNA and/or Parlex should be

enjoined from determining that Pashos is not "totally disabled" for the remainder of Pashos' life.

**COUNT II**

## BREACH OF CONTRACT
### (CIGNA)

76.     Pashos hereby incorporates by reference the allegations set forth in paragraphs 1-75 as though alleged herein.

77.     Pashos is the intended beneficiary of a Disability Income Policy acquired on his behalf by Parlex from CIGNA.

78.     The Disability Income Policy provides monthly payments to Pashos when he is "totally disabled."

79.     Pashos is "totally disabled" at this time and will be "totally disabled" for the rest of his life.

80.     Pashos filed a claim for benefits with CIGNA in 1982 or 1983.  As a result of the claim, CIGNA began making payments to the plaintiff in accordance with the policy.

81.     CIGNA, in 2004, subsequently notified Pashos of its decision to cease making payments to Pashos.  Pashos timely appealed this decision and that appeal was denied by CIGNA.  CIGNA has further refused to consider any further appeal by Pashos.

82.     CIGNA's decision to cease making payments to Pashos is in violation of the terms of the policy.

83.     By way of correspondence appealing the denial of benefits, Pashos has notified CIGNA of its breach of contract.

84.     That as a direct and proximate result of CIGNA's breach of contract, Pashos has suffered the loss of the present value of the benefits owed to him under his contract with CIGNA, an amount within the jurisdictional limits of this Court, together with interest and costs.

**COUNT III**
**BAD FAITH BREACH OF CONTRACT**
**(CIGNA)**

85.    Pashos, hereby incorporates by reference the allegations set forth in paragraphs 1-84 as though alleged herein.

86.    CIGNA maintains an internal policy of seeking to cut off benefits contracted to insureds who are collecting payments on disability income policies/contracts under circumstances that are not justified and to further the economic interests of CIGNA.  This policy includes coercing insureds into accepting lump sum payments in lieu of future monthly indemnity benefits against the insureds desires.

87.    That on or about October 19, 2004, Scott C. Taylor, representing himself as a doctor, contacted Dr. Thies by telephone to discuss Dr. Thies' treatment and prognosis for Pashos and other aspects of Pashos' disabling condition.  Dr. Thies, who practices in the Manchester, New Hampshire area, has been, and continues to be, Pashos' primary treating physician for his disabling condition.

88.    That at no time was Pashos notified by CIGNA of its intent to contact Dr. Thies to verbally discuss his disabling condition and at no time was Pashos asked for permission by CIGNA to contact Dr. Thies in such a manner.  Pashos never gave CIGNA permission to contact Dr. Thies to verbally discuss his treatment or disabling condition.

89.    CIGNA's unannounced verbal communication with Pashos' treating doctor was an illegal violation of Pashos' physician-patient privilege.  See RSA 329:26.  CIGNA's use of an employee representing himself as a doctor to contact Pashos' treating physician and talking about

Pashos' care, capabilities and prognosis does not waive this privilege, nor does Pashos' claim for benefits waive this aspect of the privilege, see Nelson v. Lewis, 130 N.H. 106 (1987).

90.     CIGNA's decision that Pashos could resume working in any occupation and to terminate Pashos' benefits was made without a change in the disabling nature of Pashos' condition and in complete contravention to the care and treatment prescribed by Doctors Neal, Thies and Rowe and the opinions expressed by Doctor Thies and vocational expert James Parker.

91.     CIGNA, at all times relevant hereto, was, and is, fully aware of Dr. Thies' diagnosis disabling Pashos and his prognosis that Pashos' disability is worsening and permanent.

92.     CIGNA at all times relevant hereto was, and is, aware that its denial of benefits to Pashos was in contravention of the opinion of its own vocational rehabilitation counselor, inappropriate and a breach of contract, to the detriment of their insured, Pashos.

93.     CIGNA follows a pattern and practice of taking inappropriate action, in breach of disability contracts, against their own insureds knowing that it is reasonably likely that such breaches will cause additional harm to their insureds beyond the value of the benefits due and owing under said contracts.  CIGNA chooses this course of action in an effort to maximize profits in the handling of their claims while knowing that such actions foreseeably cause additional damage to individual insureds that exceed the monetary value of the loss of contractual benefits.

94.     CIGNA acted in bad faith when it unilaterally, without a reasonable basis and in contravention of their own vocational expert's opinion, cut off Pashos' benefits at a time when Pashos was unable to return to work.

95.     Pashos will suffer, and has suffered, reasonably foreseeable damages beyond the loss of his contractual disability income as a result of CIGNA's breach of contract.

96.     As a direct and proximate result of CIGNA's bad faith breach of contract, Pashos has suffered foreseeable consequential/extra-contractual damages, including attorneys fees, within the jurisdictional limits of this Court, together with interest and costs.


## COUNT IV
## TORTUOUS DENIAL OF CLAIM
### (CIGNA)

97.     Pashos hereby incorporates by reference the allegations set forth in paragraphs 1-96 as though alleged herein.

98.     CIGNA has a duty to its insureds to fairly and reasonably evaluate claims for benefits, and to fairly and reasonably make decisions affecting benefits once being paid to, and relied upon, by its insureds.  CIGNA has a further duty to its insureds to base a decision to terminate ongoing disability payments on a reasonable and good faith basis following a reasonable and good faith analysis of individual claims.

99.     CIGNA breached one or more of these duties to Pashos when it negligently and/or recklessly took affirmative action to create and manufacture misleading and inadequate evidence or facts for the sole purpose of wrongfully denying continued coverage to their insured, Pashos. CIGNA further breached these duties when it targeted Pashos' claim for termination in an effort to achieve goals in claim reduction and lump summing ongoing claims in order to make profits.

100.    As a direct result of CIGNA's negligent and/or reckless breach of one or more of the above duties, Pashos has been caused to suffer pain and mental anguish, and mental distress, past, present and future; caused to suffer physical injuries; caused to suffer permanent injuries; caused Pashos to incur medical expenses and to incur other losses, including financial losses, and the loss of

the enjoyment of life; all to the damage of Pashos, as he says, in an amount that is within the jurisdictional limits of this Court, together with attorney's fees, interest and costs.

## COUNT V
## ENHANCED DAMAGES
## (CIGNA)

101.   Pashos, hereby incorporates by reference the allegations set forth in paragraphs 1-100 as though alleged herein.

102.   The creation of a disability income policy and the expected intense reliance upon disability income provided by the policy when an insured becomes disabled, creates a fiduciary relationship between the insurer and the insured.

103.   For all of the reasons set forth herein, including the CIGNA's willful, wanton and/or reckless breach of their fiduciary duty owed to Pashos, the conduct of CIGNA is sufficient to justify an award of enhanced compensatory damages within the jurisdictional limit of this Court, together with attorney's fees, interest and costs.

## COUNT VI
## DECLARATION OF RIGHTS PURSUANT TO RSA CHAPTER 491
## (CIGNA)

104.   Pashos is the designated third party beneficiary of a disability policy obtained by Parlex for his benefit from or through CIGNA.  This disability policy was in effect when Pashos became totally disabled in 1983.  In correspondence dated October 28, 2004, CIGNA defined a disability under the policy as:

inability of the Individual to engage in any occupation or employment for which he is qualified or may reasonably become qualified by reason of his education, training or experience

105.     The policy provides monthly payments to Pashos when he is unable to work because of his disabling condition.

106.     Due to chronic and worsening conditions brought about by the surgical removal of a large, left-sided acoustic neuroma along with several later surgeries and a meningitis infection affecting the site of his original surgery, Pashos has been, and is currently, unable to be gainfully employed in any occupation.   Further, Pashos' conditions are permanent and continue to progressively worsen over time.

107.     Pashos has received disability benefits through the policy with CIGNA for more than 20 years.

108.     CIGNA, in October of 2004, notified Pashos of its decision to cease making disability payments to Pashos.  Pashos timely appealed this decision.  CIGNA denied his appeal for the reasons set forth in its original notice of October 28, 2004.  Pashos filed a timely second appeal on June 3, 2005.  CIGNA, after receiving three reminders of the June 3, 2005 appeal, has failed to make any response to the June 3, 2005 appeal.

109.     CIGNA's decision to cease making payments is in violation of the terms of the disability policy.

## DEMAND FOR JURY TRIAL

110.     Pashos demands trial by jury on all issues so triable.

WHEREFORE, the petitioner/plaintiff, Evangelos Pashos, prays:

A.    That this Court order CIGNA and/or Parlex to pay past due and future benefits, damages, attorney's fees, costs and interest as allowed under Counts I through V in accordance with ERISA or the laws of New Hampshire;

B.    That this Court declare under Count VI that Pashos is totally disabled from gainful employment in any occupation, and is expected to be so disabled for the remainder of his life;

C.    That this Court order CIGNA under Count VI pay to Pashos all monies due and owing under the policy described herein, and, including petitioner's attorneys fees in accordance with RSA 491:22-a; and

D.    That this Court grant such other and further relief as may be just and equitable.

Respectfully submitted,

Evangelos Pashos
By His Attorneys:

McDOWELL & OSBURN, P.A.

December ___, 2005                    By:    _____
                                             David S.V. Shirley, Esq.
                                             282 River Road
                                             P O  Box 3360
                                             Manchester, NH  03105-3360
                                             (603) 623-9300